UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JERRY M.,                                                                22-CV-00425-MJR

        Plaintiff,

                                                                        DECISION AND ORDER

    -v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18)

Plaintiff Jerry M.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and defendant's motion (Dkt. No. 14) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on August 30, 2010, with an alleged onset date of September 30, 1995. (Administrative Transcript ["Tr."] 117-20, 1103). The claim was initially denied and was denied again following an administrative hearing before an administrative law judge ("ALJ"). The Appeals Council denied review and Plaintiff appealed to this Court.

On July 26, 2016, this Court remanded the case for further proceedings. On remand, the ALJ again issued an unfavorable decision. Plaintiff then appealed directly to this Court.

On February 6, 2020, this Court again remanded the case. On remand, the case was assigned to ALJ Bryce Baird, who held a telephonic hearing on September 21, 2021, at which Plaintiff participated, with counsel. (Tr. 31-67). A vocational expert also testified. On March 2, 2022, the ALJ issued an unfavorable decision (Tr. 1100-45), and Plaintiff appealed that decision directly to this Court.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual

conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and

whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.*

§§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.  *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 30, 2010, the application date. (Tr. 1105-06). At step two, the ALJ found that Plaintiff has the following severe impairments: crush injury of left index finger, status post reconstructive surgery; lumbar disc disease, status post fusion surgery; cervical disc disease; and bipolar disorder. (Tr. 1109-10). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 1110-13).

Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform the light work, except:

> he could lift and carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours total in an 8-hour workday, and stand and/or walk 6 hours total in an 8-hour workday. The claimant could occasionally use his left upper extremity to operate hand controls and frequently handle and finger with his left hand. Additionally, the claimant could occasionally reach overhead with his left upper extremity. The claimant could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant could occasionally stoop, kneel, and crouch, but he could never crawl. The claimant was limited to simple, routine tasks that could be learned after a short demonstration or within 30 days.

(Tr. 1113-34). At step four, the ALJ found that Plaintiff did not have any past relevant work. (Tr. 1134). The ALJ then proceeded to the fifth and final step, where he found that Plaintiff could perform other work that exists in significant numbers in the national economy. (Tr. 1134-35). Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 1136).

IV.     *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ failed to incorporate certain reaching, handling, and fingering limitations in the RFC that were opined to by Plaintiff's treating physicians.  The Court disagrees.

Plaintiff's challenges the ALJ's RFC finding that he could occasionally use his left hand to operate hand controls, frequently handle and finger with the left hand, and occasionally reach overhead with the left upper extremity.  The Court finds, however, that the ALJ's RFC determination pertaining to Plaintiff's left upper extremity is supported by substantial evidence. (Tr. 1113). The ALJ gave significant weight to the opinions from treating physicians Drs. Calabrese and Hart.  He also considered the totality of the evidence pertaining to Plaintiff's physical impairments, including the results and examination findings from consultative examiner Dr. Schwab, as well as Plaintiff's own statements in the record. (Tr. 1114-35).

The RFC derives substantial support from the opinions of Drs. Calabrese and Hart, proffered between November 2014 through October 2016, when the claimant stopped pursuing treatment for his left shoulder impairment. (Tr. 1130-31; *see* Tr. 696, 708, 713, 720, 726, 731, 736, 752, 758, 763-64, 1690, 1696, 1702, 1708 (Dr. Calabrese); Tr. 747, 763 (Dr. Hart)). Both providers opined that "[p]ertaining to the injuries of this [July 29, 2014 bicycle] accident" Plaintiff could perform sedentary to light work duties with limited use of the left arm, and he should avoid excessive repetitive motions to the left arm and overhead reaching with the left arm. *Id.* The ALJ gave significant weight to these opinions,

as they were consistent with Plaintiff's functioning and were proffered by treating sources. (Tr. 1130-31). The RFC finding derives substantially from these opinions, reflecting that the claimant could only occasionally use his left arm to operate hand controls and occasionally reach overhead with the left arm, and he could only perform the lifting required for light exertional work. (Tr. 1113).

To the extent the ALJ's RFC finding deviates from these opinions, it does so only by degree – the ALJ accommodated the opinions insofar as the record supported some (occasional) left-arm overhead reaching limitations, although the record did not support a complete inability to perform overhead reaching with the left arm. Plaintiff is incorrect that this was error simply because the ALJ gave these opinions only significant weight and not controlling weight. "An ALJ is not required to adopt wholesale the opinion of any one medical source, but is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole." *See Fancher v. Comm'r of Soc. Sec.*, No. 19-cv-158 (KS), 2020 WL 5814359, at *5 (W.D.N.Y. Sept. 30, 2020) ("An ALJ is not required to adopt wholesale the opinion of any one medical source, but is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole."); *see also Morine O. v. Comm'r of Soc. Sec.*, No. 20-CV-6682MWP, 2022 WL866249, at *6 (W.D.N.Y. Mar. 23, 2022) (upholding RFC although the ALJ neither adopted nor explained why they rejected the opined limitations, because "[s]imply stated, an ALJ is not required to adopt a medical opinion in its entirety and may determine an RFC that differs from a medical opinion, where these differences are supported by

substantial evidence in the record and are not the product of legal error." (internal quotations and citations omitted)).

The ALJ did not rely solely on these opinions, but also on the opinion from orthopedic consultative examiner Dr. Schwab and the record at large, including examination findings and Plaintiff's admitted activities. Dr. Schwab opined Plaintiff could continuously reach overhead with either arm, occasionally handle with the left arm, and carry up to 20 pounds continuously, supporting that Plaintiff could at least perform the work outlined in the RFC finding. (Tr. 1131-32, *see* Tr. 1514, 1516). Likewise, during the April 2021 consultative examination, Plaintiff exhibited some reduced range of motion for forward flexion and abduction, but no tenderness, muscle atrophy, weakness, instability, or sensation abnormalities. (Tr. 1512).

The deviation between the RFC and the opinions from treating physicians Drs. Calabrese and Hart is also supported by the record and the ALJ's discussion of the record evidence supporting the RFC finding. For instance, the ALJ observed (Tr. 1130-31), that the treating providers assessed only a mild or mild-to-moderate degree of temporary, partial impairment due to these injuries, belying Plaintiff's contention that these treating physician opinions support his claims of total disability by reason of his left shoulder impairment. (*See, e.g.*, Tr. 1690); *Cf. Gerry v. Berryhill*, 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) ("Courts within this Circuit have held that opinions of similar 'mild to moderate limitations' support RFC findings that claimants are capable of 'light work.'" (internal citation omitted) (collecting cases)).

Plaintiff also contends the ALJ's RFC finding that Plaintiff could perform frequent handling and fingering with the left hand is inconsistent with the opinions from Drs. Calabrese and Hart. However, Drs. Calabrese and Hart never opined that Plaintiff had any left-hand limitations – their opinions are solely premised on injuries resulting from Plaintiff's July 2014 bike accident, after which Plaintiff reported only back and left shoulder symptoms, not hand impairment. (*See, e.g.*, Tr. 692-96, 748-52, 1685-96). The opinions accordingly assert limited left *arm*, not hand, use, within a sedentary-to-light position. (*See, e.g.*, Tr. 763, 752, 747, 736, 731, 726, 713, 720, 708, 696, 1708, 1702, 1696, 1690). Further proof of this is that neither provider treated Plaintiff's left hand, as reflected by treatment notes that did not indicate any left-hand examinations were performed by either provider during this time, nor were any diagnostic studies pertaining to the left hand ordered. (*See, e.g.*, Tr. 692-96, 748-52, 1685-96; *see also* Tr. 762 (advising Plaintiff to see pain management provider for treatment of his left-hand impairment)).

In any event, the ALJ's RFC finding that Plaintiff could frequently handle and finger with the left hand derives support from other opinions of record. For instance, the ALJ gave significant weight to an opinion from Dr. Lanighan, who examined Plaintiff in April 2014 following a 2013 surgery to remove a contracture that had developed on Plaintiff's left middle finger. (Tr. 1129, *see* Tr. 2130). Dr. Lanighan observed that, apart from some mild deficits in left finger flexion, Plaintiff appeared "to have gained flexibility involving his hand and finger" and concluded that Plaintiff could lift up to 20 pounds. (Tr. 1129 (giving

significant weight to this opinion), Tr. 2130 ("I would have a difficult time understanding why he would not be able to return to work in some capacity.")).

Further supporting the left-hand RFC limitations, the ALJ gave substantial weight to a June 2014 functional capacity evaluation by occupational therapist Ms. Craft, who evaluated Plaintiff and determined he could not perform *repetitive* or *sustained* (more than frequent) gripping and pinching with the left hand, though he had been able to complete all functional tasks, paperwork, and questionnaires with his right hand. (Tr. 1130, *see* Tr. 1964). Likewise, several providers provided temporary assessments indicating that Plaintiff could perform work at least commensurate with the limitations outlined in the RFC, including opining Plaintiff could return to work with light duty restrictions (Tr. 202); with no limitations (Tr. 2892); without repetitive use of the left hand (Tr. 2140); and with desk-based duties (Tr. 307), and referred Plaintiff for vocational rehabilitation (Tr. 307, 1964). The ALJ gave these assessments some weight (Tr. 1128), and they provide additional support for the ALJ's RFC finding.

The rationale that Plaintiff could perform frequent, but not occasional, handling and fingering is made further clear vis-à-vis the ALJ's consideration of Dr. Schwab's opinion. (Tr. 1132). Dr. Schwab opined, *inter alia*, that Plaintiff had marked restrictions for handling objects with the left hand and could occasionally handle and finger with the left hand. (Tr. 1513, 1516). During the consultative examination, Dr. Schwab had observed that Plaintiff had 4/5 left-hand grip strength, could not tie a knot with both hands, could button, zip, and Velcro with difficulty, and had intact hand and finger dexterity but for decreased left middle

Case 1:22-cv-00425-MJR   Document 19   Filed 12/13/24   Page 13 of 15

finger range of motion. (Tr. 1512). In giving some weight to this opinion, the ALJ reasoned that "Dr. Schwab's opinion is generally consistent with the medical record except the claimant did not exhibit a marked limitation using his left hand during any examination since 2012." (Tr. 1132). Consistent with this reasoning, and supporting the RFC finding, outside of Dr. Schwab's examination, Plaintiff did not report any left-hand impairment (except as medical history) nor did he seek ongoing treatment for his left-hand symptoms after November 2014, when Plaintiff stopped treating with pain management provider, Dr. Gosy, after he refused to prescribe narcotic medications. (Tr. 1120, 1122, see Tr. 667-68, 759, 767; see also Tr. 1568-1603 (treatment notes showing no reports of left-hand impairment)).

The ALJ's RFC finding is also supported by treatment records showing that although Plaintiff had reduced range of motion and strength of his left middle finger, he otherwise exhibited full left-hand strength, sensation, and overall function. (Tr. 282, 293, 300, 1115-19, 1125, 2076, 2098, 2128, 2128 (mild tenderness), 2130 (noting Plaintiff had "full flexibility of his left hand with regards to flexion" and "mild flexion contracture")). With treatment, the record demonstrates Plaintiff's symptoms improved as did his left-hand grip strength and middle finger range of motion, such that Plaintiff's grip strength was measured at 30 pounds by January 2013. (Tr. 293, 324, 341, 430, 2098 (middle finger range of motion and flexibility "has improved quite a bit"), 2130). As the ALJ also considered, after reviewing Plaintiff's medical records pertaining to his worker's compensation claim in January 2014, Dr. Silverman reported that there was no indication

that Plaintiff required the narcotic medications he was prescribed, as treatment records showed little attendant objective findings. (Tr. 1118, see Tr. 2043-47). Dr. Silverman specifically noted that the record showed Plaintiff had "fairly good grip strength" and "good function." (Tr. 2045).

The RFC is further supported by Plaintiff's own repeated admissions that treatment improved his left-hand functioning and relieved his pain, as the ALJ discussed. (Tr. 1114-17, see, e.g., Tr. 732, 754, 759, 1898, 1953, 1944, 1977, 1985, 1991, 2094, 2097, 2100, 2104). For instance, Plaintiff reported that medications allowed him to perform household chores, including washing dishes and cleaning (Tr. 715, 1977, 1985, 2097), as well as caring for his three children (Tr. 1898, 1953, 1944, 1977, 1985 (listing his children's ages as two-years old, five-years old, and 11-years old), 2094, 2100 (noting he was able to take his children to the park and to Chuckie Cheese)); helping his wife (Tr. 1953); exercising (Tr. 2100); and spending time with friends and family (Tr. 953). *See Abarzua v. Berryhill*, 754 F. App'x 70 (2d Cir. 2019) (Second Circuit rejecting Abarzua's contention that the ALJ failed to properly consider treating physicians' opinions that she could not perform sedentary work and pointed out that the ALJ did not err in discounting the restrictive limitations from treating sources as they were contradicted by the findings and conclusions of consultative medical sources, her conservative treatment, and her activities of daily living).

In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence and must therefore be upheld.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 6) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   December 13, 2024
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge